IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

ZBIGNIEW MYKO, an individual,

Plaintiff,

vs.

HONEYWELL INTERNATIONAL INC., a New Jersey corporation;

Defendant.

No. 2:05-cv-3909-HRH

O R D E R

Cross-Motions for Summary Judgment

Defendant moves for summary judgment.[1] This motion is opposed and plaintiff cross-moves for summary judgment.[2] Oral argument was requested and has been heard.

Facts

Plaintiff is Zbigniew Myko, who was employed by defendant Honeywell International, Inc. from January 1988 until November 18, 2003, when he was terminated as part of a reduction in force. On the day of his termination, plaintiff met with Chad Taylor, a Honeywell Human Resources employee, who informed plaintiff that he was eligible for benefits under the Severance Pay Plan for Designated Employees

[1] Docket No. 23.

[2] Docket No. 32.

of Honeywell International, Inc. The Honeywell Severance Pay Plan qualifies as a employee benefit plan under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1191c.

Taylor gave plaintiff two copies of an Employment Separation Agreement and Release Memorandum, which confirmed plaintiff's "rights and benefits" under the Honeywell Severance Pay Plan.[3] The Separation Agreement provided that plaintiff was entitled to be paid for 20 days of vacation pay (160 hours).[4] According to the Separation Agreement, plaintiff had eight carryover vacation hours from previous years, 32 unused hours for 2003,[5] and 120 of so-called "grandfather" hours.[6] The Separation Agreement also provided that plaintiff was entitled to receive 20 weeks of severance pay "[p]rovided you sign and return this Agreement and Release in the form provided to you[.]"[7] The last page of the Separation Agreement

---

3 Employment Separation Agreement and Release at 1, Exhibit D, Defendant's Statement of Facts, Docket No. 24.

4 Id.

5 This figure was rounded up from 31 hours because Honeywell's Vacation Policy provides that fractional days be rounded up. See Affidavit of Kendall Oliver at 2, ¶ 10, Exhibit B, Defendant's Statement of Facts, Docket No. 24.

6 Employment Separation Agreement and Release at 1, Exhibit D, Defendant's Statement of Facts, Docket No. 24.

7 Id. at 2.

provided a space for the employee's signature.[8] The Separation Agreement further provided:

> In order to receive the Consideration under this Agreement and Release, you must return this signed Agreement and Release in the form provided [to] **Human Resources** at **Honeywell Engines, Systems & Services, 111 S 34th Street, Dept 82-06 301-237, Phoenix, AZ 85034**, no later than **01/14/04.**[[9]]

An attachment to the Separation Agreement listed the "Program Eligibility Factors" for Honeywell's Severance Pay Plan, one of which was "sign[ing] and return[ing] the Employment Separation Agreement and Release in the form provided . . . and within the time allowed."[10] The Honeywell Severance Pay Plan also provides that "Severance Benefits shall be provided in consideration for, and conditioned upon, (i) the execution of a release by the Eligible Employee of all claims . . . in the form and manner prescribed by the Employer[.]"[11]

During his exit interview with Taylor, plaintiff told Taylor that he believed that the number of vacation hours stated in the Separation Agreement was incorrect. Plaintiff appears to be contending that he had 52 hours of unused vacation time for 2003,

---

[8] Id. at 6.

[9] Id. at 3 (emphasis in original).

[10] Attachment A at 1, Exhibit E, Defendant's Statement of Facts, Docket No. 24.

[11] Severance Pay Plan for Designated Employees of Honeywell International Inc. at 4-5, Exhibit C, Defendant's Statement of Facts, Docket No. 24.

rather than the 40 hours that was reflected in the Separation Agreement.

Plaintiff's Vacation/Absence Tracking Report as of November 20, 2003, shows that plaintiff had 52 hours of "available vacation" for 2003.[12] Kendall Oliver, who is a Human Resources Specialist for defendant, explained that the 52 hours

> consisted of: 31 hours of accrued earned vacation hours (the 31 hours were not rounded up because vacation hours are only rounded up to full days where an employee is being terminated) + 13 hours of accrued but unearned vacation hours for December 2003 + 8 hours of unexpired carryover vacation hours from previous years. Plaintiff's unearned 13 hours of vacation from December 2003 showed up on his available vacation hours on [his] paycheck because Honeywell's Vacation Policy permits employees to use allotted vacation for months that they have not yet worked. Even though plaintiff could have used the 13 hours of unearned December vacation while he remained employed by Honeywell, plaintiff was not entitled to be paid for the 13 hours that he would have accrued during December 2003 because he did not work during December 2003 and had not earned those hours.[[13]]

Plaintiff contends that he asked for a recalculation of his vacation time during his termination interview. Plaintiff avers that he was told that he "could either sign the incorrect documents or

---

[12] Vacation/Absence Tracking Report at 1, Exhibit D to Oliver Affidavit, which is appended as Exhibit B to Defendant's Statement of Facts, Docket No. 24.

[13] Oliver Affidavit at 3-4, ¶ 17, Exhibit B, Defendant's Statement of Facts, Docket No. 24.

wait for HONEYWELL'S response as to whether [he] could have the vacation time allotted increased."[14] Plaintiff also contends that he was not told during his exit interview that if he did return the signed Agreement by January 14, 2004, he would not receive any severance pay. Plaintiff did not sign the Separation Agreement during his exit interview.

On November 25, 2003, defendant sent plaintiff a letter, in which was enclosed two sets of the Separation Agreement. The letter advised:

> The signed paperwork must be returned to our office by **01/14/04.** If your severance is scheduled to start prior to **01/14/04** and we have not received your signed agreement, **all payments will be suspended** until we receive the signed agreement.[[15]]

Plaintiff did not sign and return the Separation Agreement after receiving the November 25 letter. Plaintiff avers that he understood the November 25 letter to mean "that my severance pay would not be paid until I signed the document, not that it was canceled if I did not sign and return it by [January 14, 2004.]"[16]

---

[14] Affidavit of Zbigniew Myko at 2, ¶ 6, which is appended to Plaintiff's Separate Statement of Facts, Docket No. 29.

[15] Letter from Honeywell ES&S Propulsion Human Resources to Zbigniew N Myko at 1, Exhibit F, Defendant's Statement of Facts, Docket No. 24.

[16] Myko Affidavit at 2, ¶ 10, which is appended to Plaintiff's Separate Statement of Facts, Docket No. 29.

On October 6, 2005, plaintiff returned the signed Separation Agreement to defendant. In a cover letter, plaintiff mentioned the dispute over the vacation hours and stated that the "return of the documents . . . was delayed due to circumstances beyond my control."[17] In his affidavit submitted in connection with the briefing on the instant motions, plaintiff explains that he "was severely ill and hospitalized twice (2) in the United States and once in Poland during this period."[18]

Defendant has paid plaintiff for 160 hours of vacation time, which is all that defendant contends plaintiff was due. Defendant has not paid plaintiff any severance pay. Defendant contends that plaintiff is not entitled to severance pay because plaintiff did not return the signed Separation Agreement by January 14, 2004.

Plaintiff's amended complaint asserts three causes of action. In Count I, plaintiff alleges that defendant breached its fiduciary duty under ERISA by failing to pay him severance benefits. In Count II, plaintiff alleges that defendant breached its fiduciary duty under ERISA by failing to inform him that he had to accept the severance package by January 14, 2004. In both Count I and II, plaintiff seeks to recover the benefits that he believes he is due

---

[17] Letter from Zbigniew Myko to Honeywell Human Resource Department at 1, Exhibit B to Myko Affidavit, which is appended to Plaintiff's Separate Statement of Facts, Docket No. 29.

[18] Myko Affidavit at 3, ¶ 16, which is appended to Plaintiff's Separate Statement of Facts, Docket No. 29.

under the Honeywell Severance Pay Plan. In Count III, plaintiff alleges a claim for unpaid wages pursuant to A.R.S. § 23-355. In Count III, plaintiff seeks to recover the additional vacation pay that he believes he is due.

The parties filed cross-motions for summary judgment. The court's review of those motions raised some concerns about jurisdiction, and the court requested supplemental briefing on the jurisdictional issue. Satisfied that it has subject matter jurisdiction,[19] the court is now ready to dispose of the cross-motions for summary judgment.

Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in

---

[19] See Order re Case Status at 1, Docket No. 43.

its favor. Id. at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). When, as here, the court is faced with cross-motions for summary judgment, it must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." American Civil Liberties Union of Nevada v. City of Las Vegas, 333 F.3d 1092, 1097 (9th Cir. 2003).

The court "review[s] ERISA benefit denial claims de novo unless the discretion to grant or deny claims is unambiguously retained by a plan administrator or fiduciary." Feibusch v. Integrated Device Tech., Inc. Employee Ben. Plan, 463 F.3d 880, 883 (9th Cir. 2006). The Honeywell Severance Pay Plan provides that the administrator "shall have the full discretionary power and authority to (i) construe and interpret the Plan . . . [and] (ii) determine all questions of fact arising under the Plan, including questions as to eligibility for and the amount of benefits[.]"[20] This language is sufficient to shift the standard of review from a de novo standard

---

[20] Severance Pay Plan for Designated Employees of Honeywell International Inc. at 12, ¶ 6(b), Exhibit C, Defendant's Statement of Facts, Docket No. 24.

to an abuse of discretion of standard. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963-65 (9th Cir. 2006) (en banc). That said, even if the court were to apply the more stringent de novo standard to this case, the result would be the same.

In his amended complaint, plaintiff appears to be alleging breach of fiduciary duty claims in Counts I and II. However, at the hearing on the parties' motions, plaintiff now contends that these are actually claims for benefits brought pursuant to 29 U.S.C. § 1132(a)(1)(B). To the extent that plaintiff's claims in Count I and II are breach of fiduciary claims, those claims fail. If plaintiff's claims in Count I and II were brought as breach of fiduciary duty claims pursuant to 29 U.S.C. § 1132(a)(2), they fail because they have been brought on behalf of plaintiff and not the Plan. See Chuck v. Hewlett Packard Co., 455 F.3d 1026, 1039 (9th Cir. 2006). If plaintiff's claims in Count I and II were brought as breach of fiduciary duty claims pursuant to 29 U.S.C. § 1132(a)(3), they fail because plaintiff seeks money damages, which is not "appropriate equitable relief." See Bast v. Prudential Ins. Co. of Amer., 150 F.3d 1003, 1010 (9th Cir. 1998) (citing Mertens v. Hewitt Assocs., 508 U.S. 248, 257-58 (1993)).

To the extent that plaintiff's claims in Count I and II are claims for benefits, as he now insists they are, those claims fail because plaintiff is not entitled to benefits under the Honeywell Severance Pay Plan. The Separation Agreement clearly and

unambiguously provided that in order to be entitled to benefits, plaintiff had to return a signed copy of the Separation Agreement by January 14, 2004. It is undisputed that plaintiff did not return the signed Separation Agreement by January 14, 2004.

Plaintiff contends that he relied on the November 25, 2003 letter and that the letter could reasonably be interpreted to mean that he would not receive severance payments until he returned the signed Agreement but once he returned the signed Agreement, he would begin to receive benefits, regardless of whether he returned the signed Agreement by January 14, 2004. The language in the letter on which plaintiff relies provides:

> The signed paperwork must be returned to our office by **01/14/04**. If your severance is scheduled to start prior to **01/14/04** and we have not received your signed agreement, **all payments will be suspended** until we receive the signed agreement.[21]

Plaintiff focuses on the last sentence and insists that his interpretation of the letter is reasonable.

The letter plainly and unambiguously states that the signed Agreement had to be returned by January 14, 2004. The suspension language in the second sentence only applies to individuals whose severance pay was scheduled to start before January 14, 2004. Plaintiff was not one of those individuals. Per the terms of the

---

[21] Letter from Honeywell ES&S Propulsion Human Resources to Zbigniew N Myko at 1, Exhibit F, Defendant's Statement of Facts, Docket No. 24.

Honeywell Severance Pay Plan, severance pay began after the employee's Notice Period and utilization of all periodic vacation amounts.[22] Plaintiff received Notice Pay and vacation pay through the pay period ending January 18, 2004.[23] Thus, plaintiff's severance pay was not scheduled to start until after January 18, 2004. Plaintiff's interpretation of the letter is not reasonable, but even if it were, "ERISA prohibits informal written or oral amendments of employee benefit plans[.]" Gable v. Sweetheart Cup Co., 35 F.3d 851, 857 (4th Cir. 1994) (citing 29 U.S.C. § 1102(b)(3)). The letter could not modify the January 14, 2004 deadline that was set forth in the Separation Agreement.

None of plaintiff's other arguments are availing. Plaintiff first complains about being handed a "stack of documents" at his termination interview and seems to be suggesting that he could not have possibly signed the Agreement during his exit interview. However, plaintiff admitted at his deposition that the "stack of documents" that he was given during his exit interview consisted of two copies of the Agreement[24] and that Taylor reviewed the documents

---

[22] Severance Pay Plan for Designated Employees of Honeywell International Inc. at 11, Exhibit C, Defendant's Statement of Facts, Docket No. 24.

[23] Exhibit C to Oliver Affidavit, which is appended as Exhibit B to Defendant's Statement of Facts, Docket No. 24.

[24] Deposition of Zbigniew Myko at 31, lns. 18-23, Exhibit A, Defendant's Statement of Facts, Docket No. 24.

with him.[25] More importantly, there was no requirement that plaintiff sign the Agreement during his exit interview. A signed Agreement did not have to be returned until January 14, 2004.

Plaintiff next contends that he was never told during his exit interview that he had to return the signed Agreement by January 14, 2004.[26] Even if this fact is true, defendant had no obligation to orally advise plaintiff of the deadline for the returning the signed Agreement. "Congress, in passing ERISA, did not intend that participants in employee benefit plans should be left to the uncertainties of oral communications in finding out precisely what rights they were given under their plan." Musto v. American Gen. Corp., 861 F.2d 897, 909-10 (6th Cir. 1988). "'A written plan is to be required in order that every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan.'" Id. at 910 (quoting H.R. Rep. No. 1280, 93d Cong., 2d Sess. 4639 at [1974] U.S. Code Cong. & Admin. News 5077). Defendant had an obligation to provide plaintiff with information about the deadline in writing and defendant fulfilled this obligation by giving plaintiff copies of the Agreement during his exit interview and by sending him a copy of the Agreement by mail. If plaintiff were not told during his exit interview that the deadline for

---

25 Id. at 19-20.

26 Id. at 28, lns. 4-10 and 31, lns. 14-15.

returning the signed Separation Agreement was January 14, 2004, that fact is irrelevant.

Plaintiff avers that he was told that he could wait to sign the Agreement until the dispute over his vacation hours was resolved.[27] This averment appears to contradict plaintiff's deposition testimony. Plaintiff testified at his deposition that he did not ask Taylor to recalculate his vacation hours and that Taylor never told him that anyone from Honeywell would contact him at a later date about the vacation recalculation.[28] Plaintiff further testified that his conversation with Taylor about the disputed vacation hours ended because plaintiff "said I'm going to come back to thinking about it since I'm going home anyway permanently I'm just going to have to figure out who to contact and how to get this thing resolved."[29] Plaintiff admitted that he never contacted anyone at Honeywell about the disputed vacation hours until he called Taylor in October 2005.[30]

---

[27] Myko Affidavit at 2, ¶ 6, which is appended to Plaintiff's Separate Statement of Facts, Docket No. 29.

[28] Myko Deposition at 52, lns. 3-21, Exhibit A, Defendant's Reply, Docket No. 36.

[29] Id. at 51, ln. 24 - 52, ln. 2.

[30] Myko Deposition at 32, lns. 3-23, Exhibit A, Defendant's Statement of Facts, Docket No. 24. Although defendant did recalculate plaintiff's vacation hours shortly after he was terminated, see Oliver Affidavit at 3, ¶ 15, Exhibit B, Defendant's Statement of Facts, Docket No. 24, defendant had no obligation to share this information with plaintiff since he never asked defendant to recalculate his vacation hours. See Drennan v. General Motors Corp., 977 F.2d 246, 251 (6th Cir. 1992).

A plaintiff "cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Kennedy v. Allied Mutual Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991). But, even assuming that the version of events in plaintiff's declaration were true, the Separation Agreement expressly provides that it "may be amended or modified only by an agreement in writing."[31] Thus, even if plaintiff were told that he could wait to sign the Separation Agreement, such a modification would not be enforceable because it was not made in writing.

Plaintiff next suggests that he was not able to return the signed Agreement by the January 14, 2004 deadline because he was seriously ill and was hospitalized, twice here and once in Poland. However, plaintiff testified at his deposition that he was not ill and that he was in the United States during the period from November 18, 2003 through January 14, 2004.[32] Thus, his illness could not have prevented him from returning the signed Agreement by January 14, 2004.

Finally, plaintiff claims that the January 14, 2004 deadline is not enforceable because defendant violated the reasonable expectation doctrine. "Under the 'reasonable expectations' doctrine, as a matter

---

[31] Employment Separation Agreement and Release at 5, Exhibit D, Defendant's Statement of Facts, Docket No. 24.

[32] Myko Deposition at 37, lns. 1-3, Exhibit A, Defendant's Reply, Docket No. 36.

of federal common law governing ERISA contracts, even an unambiguous exclusion may be unenforceable unless it is sufficiently 'clear, plain, and conspicuous' to overcome a layperson's reasonable expectations." Peterson v. American Life & Health Ins. Co., 48 F.3d 404, 411 (9th Cir. 1995) (quoting Saltarelli v. Bob Baker Group Med. Trust, 35 F.3d 352, 385-86 (9th Cir. 1994). Plaintiff argues that the January 14, 2004 deadline was arbitrary and that the November 25 letter did not clearly and plainly state that this was the deadline.

As discussed above, the November 25 letter plainly and unambiguously stated that the deadline for returning the signed Agreement was January 14, 2004. That date was also conspicuous as it was in bold type in the letter. There was also nothing arbitrary about the date. ERISA requires that an employee be given 45 days in which to consider such an agreement. See 29 U.S.C. § 626(f)(1)(F)(ii).

In sum, plaintiff is not entitled to benefits under the Honeywell Severance Pay Plan. Defendant is entitled to summary judgment on Counts I and II of plaintiff's amended complaint.

In Count III of his amended complaint, plaintiff contends that he was entitled to be paid for more than 160 hours of vacation time when he was terminated. Plaintiff seeks treble damages pursuant to A.R.S. § 23-355. Section 23-355 provides that "[i]f an employer, in violation of the provisions of this chapter, shall fail to pay wages due any employee, such employee may recover in a civil action against

an employer or former employer an amount which is treble the amount of the unpaid wages." "Wages" for purposes of § 23-353 includes vacation pay. Douglas v. Governing Board of Window Rock Consol. School Dist. No. 8, 78 P.3d 1065, 1069 (Ariz. Ct. App. 2003).

The parties agree that a one-year statute of limitations applies to plaintiff's state law claim for unpaid wages because such a claim falls under either A.R.S. § 12-541(3) or § 12-541(5). Because plaintiff is alleging that he was entitled to his vacation pay as of November 18, 2003, his last day of employment with Honeywell, he would have had to file his claim for unpaid wages by November 18, 2004. Because plaintiff did not file suit until November 9, 2005, his claim for unpaid wages is time barred unless he can show that the statute was tolled.

Plaintiff argues the statute was tolled because defendant concealed the facts giving rise to this cause of action. In Arizona, "wrongful concealment will toll the Statute of Limitations." Mohave Elec. Co-op., Inc. v Byers, 942 P.2d 451, 469 (Ariz. Ct. App. 1997). Plaintiff argues that he believed that defendant was continuing to examine his vacation claim but that defendant concealed from him that it was not continuing its investigation. Plaintiff makes this argument despite admitting in his deposition that he never asked defendant to recalculate his vacation hours.[33]

---

[33] Myko Deposition at 52, lns. 3-21, Exhibit A, Defendant's (continued...)

In order to toll the statute for wrongful concealment, "[t]here must be some positive act of concealment done to prevent detection." Jackson v. American Credit Bureau, Inc., 531 P.2d 932, 935 (Ariz. Ct. App. 1975). There is no evidence that defendant took any steps to conceal the fact that it was not continuing its investigation of plaintiff's vacation hours. The only reason plaintiff was unaware that defendant was not going to pay him for any additional vacation hours was because plaintiff never asked defendant to recalculate his vacation hours and did not call to check on his vacation hours until October 2005. Moreover, plaintiff was well aware of the disagreement over vacation hours for he raised the issue himself during his exit interview.

Plaintiff also seems to be suggesting that he is entitled to equitable tolling. "Equitable tolling applies when the plaintiff is excusably ignorant of the limitations period and the defendant would not be prejudiced by the late filing." Kyles v. Contractors/Engineers Supply, Inc., 949 P.2d 63, 65 (Ariz. Ct. App. 1997). Plaintiff argues that defendant has not been prejudiced here because plaintiff filed his action as soon as he realized that defendant would not be paying him for any additional vacation hours.

Equitable tolling has no application here. Plaintiff was not lulled or misled into not pursuing his unpaid wage claim in a timely

---

[33](...continued)
Reply, Docket No. 36.

manner. Plaintiff's claim was untimely because plaintiff never asked defendant to check on this matter until October 2005.

Plaintiff's unpaid wage claim is thus barred by the one-year statute of limitations. But, even if it were not, this claim would still fail because plaintiff was not entitled to be paid for more than 160 hours of vacation time. As explained by Oliver in her affidavit, under Honeywell's vacation policy, plaintiff was not entitled to be paid for the vacation hours that he would have accrued in December of 2003. Plaintiff produced no evidence that Oliver's calculation of his vacation hours was incorrect.

Conclusion

Defendant's motion for summary judgment[34] is granted. Plaintiff's cross-motion for summary judgment[35] is denied. The Clerk of Court shall enter judgment dismissing plaintiff's amended complaint with prejudice.

DATED at Anchorage, Alaska, this 18th day of April, 2007.

/s/ H. Russel Holland
United States District Judge

---

[34] Docket No. 23.

[35] Docket No. 32.